[Cite as *State v. Gatt*, 2011-Ohio-5221.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 10CA0108-M |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| AARON R. GATT | COURT OF COMMON PLEAS |
| | COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 09-CR-0519 |

## DECISION AND JOURNAL ENTRY

Dated: October 11, 2011

DICKINSON, Judge.

## INTRODUCTION

**{¶1}** In the wee hours of the morning, as Aaron Gatt was walking home from a neighbor's party, he saw a man standing in his driveway. Mr. Gatt beat the man up and was convicted of felonious assault. He has appealed. This Court affirms his conviction because it is not against the manifest weight of the evidence, the prosecutor's inappropriate remark during cross-examination of Mr. Gatt did not render the trial unfair, and Mr. Gatt's lawyer was not ineffective for failing to object and seek a mistrial.

## BACKGROUND

**{¶2}** Ryan Topovski testified that, on the night of the incident, he went to a party at Curtis Miller's house and met a woman named Sara Purtan. Ms. Purtan asked him to walk her to her car, which, with Mr. Gatt's permission, she had parked in Mr. Gatt's driveway next door to the Millers' house. Mr. Topovski knew Mr. Gatt from high school, but had not seen him in the

eighteen months since they had graduated. He testified that, after spending several minutes in the car with Ms. Purtan, he stepped away from the car to urinate.

{¶3} Mr. Topovski testified that, just as he finished urinating, he was suddenly knocked to the ground. He did not see or hear anyone approaching him prior to the attack. He said, "I hit the ground, and then I just kept getting hit . . . [with] [a] fist [and] feet . . . [in the] face, mainly." After he had been hit two to three times, he heard Mr. Gatt repeatedly telling him to "get the f off of his property." According to Mr. Topovski, he was finally able to get up from the ground and run, but in the darkness he ran into a fence and flipped over it. Before he could get back to his feet, he was attacked again. He was not certain whether he was kicked or punched at that point, but Mr. Gatt struck him another three or four times while he was on the ground in Mr. Miller's yard.

{¶4} Mr. Topovski testified that he never refused to leave Mr. Gatt's property and never even tried to strike back. According to Mr. Topovski, he ran away as soon as he was able to get up and escape. He ran at least a half mile in his socks to a friend's house before calling for help. He was later LifeFlighted from Medina Hospital to MetroHealth Medical Center in Cleveland. He was diagnosed with a displaced jaw fracture, two skull fractures, and a fracture of the eye socket. Mr. Topovski had surgery to put a metal plate and screws into his chin to hold his jaw together. A year after the incident, he said that he still has headaches as well as pain and clicking in his jaw.

{¶5} Mr. Topovski recalled a time, five or six years before this incident, when Mr. Gatt became angry with him for dating Mr. Gatt's ex-girlfriend. At that time, the men were freshmen in high school. According to Mr. Topovski, when they were fifteen years old, Mr. Gatt made a couple of threats over the phone, but never acted on them. Mr. Topovski also testified that, in

the intervening five or six years, he and Mr. Gatt had never had any further problems and Mr. Topovski had even been a guest at Mr. Gatt's home at some point. So, on the night of this incident, Mr. Topovski had no reason to believe that he would not be welcome to accompany Ms. Purtan to Mr. Gatt's driveway.

{¶6} When Mr. Gatt took the stand, he shared a different perspective about that night. He testified that, as he was walking home from Mr. Miller's party around one o'clock in the morning, he saw a man standing in his driveway. The man appeared to be waiting there, causing Mr. Gatt to fear he might be threatening him or his property. As Mr. Gatt approached the man, he realized it was Mr. Topovski. He asked Mr. Topovski what he was doing there, and Mr. Topovski responded by asking what Mr. Gatt was doing there. Mr. Gatt told Mr. Topovski to get off his property. Rather than walking directly to the street, Mr. Topovski walked toward Mr. Gatt. According to Mr. Gatt, Mr. Topovski's move toward him caused him to get "nervous" and punch Mr. Gatt three times in the face. He said that, after the first punch, Mr. Topovski fell against the back of Ms. Purtan's parked car and that his head hit the bumper as he fell to the ground. According to Mr. Gatt, he waited for Mr. Topovski to stand up, then punched him two more times. Mr. Gatt said that Mr. Topovski never hit him back or even tried to swing at him. After the third punch, Mr. Topovski walked away.

{¶7} Following that exchange, Mr. Gatt was "hysterical" and was "yelling into midair" when he saw Ms. Purtan step out of her car. Up until that time, he had not realized Ms. Purtan was there. He testified that he then yelled at her for bringing someone to his house so late at night. When he turned around again, he saw Mr. Topovski walking directly up the driveway toward him. Mr. Gatt said that this caused him to "g[e]t nervous again [so he] hit him again." Mr. Gatt testified that he never kicked Mr. Topovski in the face or punched him while he was on

the ground. Mr. Gatt testified that, he was not drunk, but Mr. Topovski was. Ms. Purtan testified that she was drunk that night and did not see or hear the altercation between the two men. There were no other witnesses to the incident.

## MANIFEST WEIGHT OF THE EVIDENCE

{¶8} Mr. Gatt's third assignment of error is that his conviction is against the manifest weight of the evidence. "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶9} Under Section 2903.11(A)(1), felonious assault requires a person to knowingly cause serious physical harm to another. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Mr. Gatt acknowledged that he struck Mr. Topovski at least four times and that Mr. Topovski suffered serious physical harm as a result of those blows. He has argued, however, that the verdict is against the manifest weight of the evidence because he acted in self-defense.

{¶10} Self-defense is an affirmative defense requiring the defendant to prove each element by a preponderance of the evidence. *State v. Tanner*, 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶21. "To establish self-defense for the use of less than deadly force in defense of one's person, the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable

grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and (3) the force used was not likely to cause death or great bodily harm." *Id.* "The defendant is privileged to use that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St. 3d 247, 249 (1990).

**{¶11}** Even if the jurors believed Mr. Gatt's version of the events, they would have had difficulty finding that he proved the elements of self-defense by a preponderance of the evidence. Even if Mr. Topovski created the situation by appearing to have trespassed on Mr. Gatt's property late at night and being belligerent when told to leave, Mr. Gatt's testimony did not prove that he had honest and reasonable grounds to believe that he had to punch Mr. Topovski repeatedly in order to defend himself against the imminent use of unlawful force. See *State v. Tanner*, 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶21. Mr. Gatt's testimony that he "got nervous" because Mr. Topovski walked toward him in the yard, even if believed, may not have convinced the jury that he had "honest and reasonable grounds to believe" the force he used was necessary to defend himself. *Id.* Mr. Gatt admitted that he not only threw the first punch, he threw every punch. He admitted that Mr. Topovski never hit him or even attempted to hit him and that Mr. Topovski did appear to be trying to leave the property before he first struck him. Mr. Gatt explained that he hit Mr. Topovski because Mr. Topovski "got in [his] personal space" as he was leaving. Mr. Gatt also admitted that his only injuries were a hand swollen from punching Mr. Topovski's head and a scratch on his forearm. In contrast, Mr. Topovski's injuries, proven via testimony, medical records, and photographs, indicated the use of significant force.

**{¶12}** Alternatively, the jury may not have believed Mr. Gatt's testimony. *State v. Tanner*, 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶22 ("[W]hen conflicting evidence is

presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony.") (quoting *State v. Gilliam*, 9th Dist. No. 97CA006757, 1998 WL 487085 at *2 (Aug. 12, 1998)). Although Mr. Gatt denied chasing Mr. Topovski and continuing to beat him after he fell over the fence, police testified that, approximately 150 feet away from the car, they found a tennis shoe wedged under a fence and blood in the grass nearby. Police also found blood in other areas including the bumper of Ms. Purtan's car, the driveway at some distance from where the car was parked, and the grass beside the driveway. The officers' testimony was supported by photographs of each of the blood spatters and the tennis shoe under the fence. According to police, Mr. Gatt's explanation did not match the evidence they found at the scene or the description of events they received from Mr. Topovski. Mr. Gatt never told police that he and Mr. Topovski were involved in two separate violent incidents that night, and he had specifically told them that the entire altercation happened in the driveway. Mr. Gatt did not offer the police any explanation for the blood in the grass beside the driveway and over by the fence.

{¶13} During cross-examination, Mr. Topovski was very clear that Mr. Gatt never asked him to get off his property until after the attack began. In fact, Mr. Topovski testified that he never even saw Mr. Gatt or heard anyone approaching before he was knocked to the ground. Mr. Topovski said that he drank some beer at the party, but was not drunk when he left. He said that he did not understand why Mr. Gatt attacked him. The State offered the jury various theories about Mr. Gatt's motive, from conspiracy based on a long-standing grudge to jealousy over Ms. Purtan. Based on the testimony, the jury could have reasonably concluded that Mr. Gatt used far more force than was reasonably necessary to repel any attack and/or that he never had any reasonable grounds to believe an attack was imminent. See *State v. Williford*, 49 Ohio St. 3d

247, 249 (1990); *State v. Tanner*, 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶21. This Court cannot say that the jury lost its way in finding Mr. Gatt knowingly caused Mr. Topovski serious physical harm and that he was not acting in self-defense. Mr. Gatt's third assignment of error is overruled.

## PROSECUTORIAL MISCONDUCT

**{¶14}** Mr. Gatt's second assignment of error is that the prosecutor engaged in improper conduct that deprived him of a fair trial. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Lollis*, 9th Dist. No. 24826, 2010-Ohio-4457, at ¶16 (quoting *State v. Diar*, 120 Ohio St. 3d 460, 2008-Ohio-6266, at ¶140). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.* (quoting *Diar*, 2008-Ohio-6266, at ¶140). "[B]efore an Ohio court can reverse a defendant's convictions based on a prosecutor's improper conduct, it must determine that the defendant was deprived of a fair trial." *State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623, at ¶43 (citing *State v. Fears*, 86 Ohio St. 3d 329, 332 (1999)).

**{¶15}** During the State's cross-examination of Mr. Gatt, the prosecutor asked Mr. Gatt to step down from the stand to reenact the altercation for the jury. For purposes of the reenactment, the prosecutor played the role of Mr. Topovski. The prosecutor asked Mr. Gatt what he said to Mr. Topovski when he first approached him that night, then he asked him what he did. Mr. Gatt, while apparently walking for the jury, testified that Mr. Topovski "was walking like this." The prosecutor responded, "Come on. I'm walking up to you. Don't hit me, because it might turn out a little different, okay? Tell me what you d[id]." Mr. Gatt has argued that it was improper for the prosecutor to insinuate that Mr. Gatt intended to physically attack

him in the courtroom. He has further argued that the comment damaged his credibility and increased the likelihood that the jury would believe that he was not acting in self-defense, but attacking another man for no reason when he fought with Mr. Topovski.

{¶16} The prosecutor's comment was unnecessary because it is highly unlikely that the prosecutor believed that Mr. Gatt might actually strike him during the reenactment. Even if the prosecutor believed he needed to warn Mr. Gatt that the reenactment should not include actual punches, his implied threat to retaliate was inappropriate and placed Mr. Gatt in an unfair light before the jury. The comment seems to have been calculated to cause the jury to see Mr. Gatt as a volatile man, likely to engage in sudden violence without provocation.

{¶17} Even though the prosecutor acted inappropriately during trial, "we may not reverse [a] conviction[ ] unless the prosecutor's improper conduct deprived [Mr. Gatt] of a fair trial. *State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623, at ¶62 (citing *State v. Fears*, 86 Ohio St. 3d 329, 332 (1999)). "A trial should not be deemed 'unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.'" *Id.* (quoting *State v. Skatzes*, 104 Ohio St. 3d 195, 2004–Ohio–6391, at ¶181). In this case, it appears clear beyond a reasonable doubt that, even without the prosecutor's threat, the jury would have found Mr. Gatt guilty of felonious assault. Mr. Gatt essentially testified that he knowingly caused Mr. Topovski's injuries, but his testimony, even if believed, was unlikely to have convinced the jury that he was acting in self-defense. Furthermore, the jury received testimony from Mr. Topovski and physical evidence that cast significant doubt on Mr. Gatt's testimony. Therefore, the prosecutor's comment did not render Mr. Gatt's trial unfair.

{¶18} This Court's review of the transcript in this matter revealed many troubling comments by the prosecutor. Although not amounting to reversible error, the prosecutor made numerous inappropriate comments throughout the course of this trial. In addition to the threat Mr. Gatt has assigned as error, the prosecutor repeatedly expressed his personal belief regarding the credibility of witnesses (during direct-examination of his own witness, cross-examination of the defendant, and closing argument) and frequently introduced facts not in evidence via his "questions" to various witnesses. This Court has previously addressed this prosecutor's tendency to engage in "widespread improper conduct" in the courtroom. *State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623, at ¶62, 42-70. This Court, however, released the *Johnson* opinion on July 25, 2011, ten months after the trial in this matter. As Mr. Gatt's trial took place before we expressed our concern about this practice, we will not further discuss the issue at this time. The jury would have found Mr. Gatt guilty of felonious assault even if the prosecutor had acted properly. Mr. Gatt's second assignment of error is overruled.

INEFFECTIVE ASSISTANCE OF COUNSEL

{¶19} Mr. Gatt's first assignment of error is that his lawyer was ineffective for failing to object to the prosecutor's improper comment to him during cross-examination and for failing to request a mistrial. To establish that his lawyer was ineffective, Mr. Gatt "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St. 3d 118, 2008–Ohio-3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

{¶20} Even if his lawyer should have objected to the prosecutor's inappropriate comment, Mr. Gatt has not shown that his lawyer's failure resulted in prejudice. As discussed above, the threatening comment by the prosecutor during the reenactment, while inappropriate, did not render the trial unfair. *State v. Johnson*, 9th Dist. No. 09CA0054-M, 2011-Ohio-3623, at ¶38 ("Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.") (quoting *State v. Franklin*, 62 Ohio St. 3d 118, 127 (1991)). Since there is no reasonable probability that the outcome of the trial would have been different without the alleged error, Mr. Gatt's lawyer was not ineffective. See *State v. Hale*, 119 Ohio St. 3d 118, 2008–Ohio-3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)).

{¶21} Mr. Gatt has also argued that his lawyer was ineffective for failing to object during the State's closing argument when the prosecutor commented on the law regarding self-defense. Mr. Gatt has argued that the prosecutor "gave inaccurate conclusions of law" to the jury when he told them that Mr. Gatt's testimony that Mr. Topovski had "walked at me" and that he "took a step toward me" was insufficient to prove self-defense. The prosecutor said, "[c]ould you imagine in this world how many fights, how many assaults would take place if you were allowed to break somebody's face for taking a step at you? What a ridiculous notion. That's not the law. It's not what the law is." According to Mr. Gatt, the prosecutor incorrectly "interpreted the law . . . to mean that a [person] had to be assaulted first before defending [himself] and that if [he] strike[s] someone the blow cannot break any facial bones." This is not a reasonable explanation of the prosecutor's statement. Even if the prosecutor had misstated the law during

closing argument, the jury was later given proper jury instructions regarding the elements of self-defense. We must assume the jury followed the court's instructions. *State v. Braden*, 98 Ohio St. 3d 354, 2003-Ohio-1325, at ¶87. Even if his lawyer should have objected, Mr. Gatt has not shown that he was prejudiced by the omission. We cannot conclude that there is a reasonable probability that the result of the trial would have been different if Mr. Gatt's lawyer had objected to the prosecutor's statement during closing argument. See *State v. Hale*, 119 Ohio St. 3d 118, 2008–Ohio- 3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). Mr. Gatt's first assignment of error is overruled.

## CONCLUSION

**{¶22}** Mr. Gatt's first assignment of error is overruled because he did not show that anything his lawyer failed to do caused him prejudice. His second assignment of error is overruled because the prosecutor's inappropriate remark during cross-examination of the defendant did not deprive Mr. Gatt of a fair trial. His third assignment of error is overruled because his conviction is not against the manifest weight of the evidence.

Judgment affirmed.

─────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, J.
CONCURS

CARR, P. J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.