[Cite as *State v. Smith*, 2013-Ohio-4682.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 26585 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| GERALD MICHAEL SMITH | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 03 0893 |

DECISION AND JOURNAL ENTRY

Dated: October 23, 2013

BELFANCE, Presiding Judge.

{¶1} Gerald Smith appeals his sentence for felonious assault. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Smith's wife of 25 years decided to divorce him and moved in with her son Darryl McNew, who was Mr. Smith's stepson. Mr. Smith went to Mr. McNew's house, pointed a .357 magnum at Mr. McNew's chest, and demanded to know where his wife was. A struggle ensued, and Mr. Smith repeatedly struck Mr. McNew with the gun, breaking Mr. McNew's tooth and cutting his head. During the struggle, Mr. Smith was shot in the arm. Eventually, Mr. McNew was able to wrest the gun away from Mr. Smith. Mr. Smith left the scene and was arrested at his home without incident.

{¶3} Mr. Smith was indicted for aggravated burglary and felonious assault. The State dismissed the aggravated burglary claim, and Mr. Smith pleaded guilty to felonious assault, a

felony of the second degree, and the underlying firearm specification. The trial court sentenced Mr. Smith to eight years for the felonious assault and three years for the firearm specification, for an aggregate term of 11 years in prison. Mr. Smith has appealed, raising two assignments of error for our review. For ease of discussion, we address Mr. Smith's assignments of error together.

II.

ASSIGNMENT OF ERROR I

THE APPELLANT'S SENTENCE WAS CONTRARY TO LAW AND CONSTITUTED AN ABUSE OF DISCRETION WHERE CONTRARY TO OHIO REVISED CODE []2929.11(B), SUCH A SENTENCE WAS NOT CONSISTENT WITH OTHER SENTENCES FOR SIMILAR OFFENSES COMMITTED BY SIMILAR OFFENDERS, THE COURT ERRANTLY CONSIDERED THE PRESENT CONDUCT MORE SERIOUS THAN CONDUCT NORMALLY CONSTITUTING THE OFFENSE OF FELONIOUS ASSAULT AND THE COURT FAILED TO CONSIDER THE PROPER SENTENCING FACTORS ENUMERATED IN R.C. 2929.12.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPOSING MAXIMUM CONSECUTIVE PRISON TERMS TOTALING ELEVEN YEARS UPON DEFENDANT'S CONVICTION FOR FELONIOUS ASSAULT WITH A FIREARM SPECIFICATION WHERE THE TRIAL COURT FAILED TO CONSIDER FACTORS MAKING RECIDIVISM UNLIKELY, ENUMERATED IN OHIO REVISED CODE [] 2929.12(E).

{¶4} In Mr. Smith's first assignment of error, he argues that his sentence is contrary to law because the trial court failed to sentence him in accordance with R.C. 2929.11 and R.C. 2929.12. He also argues that the trial court misapplied the law because it impermissibly relied on former R.C. 2929.14(C) when it sentenced him. In his second assignment of error, Mr. Smith argues that the trial court failed to properly consider the recidivism factors in R.C. 2929.12(E).

{¶5} The Ohio Supreme Court held in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, paragraph seven of the syllabus, that "[t]rial courts have full discretion to impose a prison

sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum * * * sentences."

> [N]evertheless, in exercising its discretion, the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender.

*State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

{¶6} After *Foster*, a plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. The Court stated:

> First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard.

*Id.*

{¶7} In September 2011, the Ohio General Assembly enacted Am.Sub. H.B. No. 86, 2011 Ohio Laws 29, which set forth significant changes in Ohio's sentencing scheme. In this legislation, the Ohio General Assembly enacted a comprehensive framework for sentencing reflecting the legislature's concern with balancing appropriate punishment with the use of government resources as well as the recognition that alternatives to prison in many instances are less costly and more effective in deterring future criminal conduct. *See id.*

{¶8} Notwithstanding the significant changes contained in H.B. 86, the Ohio General Assembly has continued to consistently articulate the overriding purposes of felony sentencing in

R.C. 2929.11 and has mandated that trial court judges adhere to the overriding purposes.[1]  R.C. 2929.11(A) provides:

> A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing.  The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources.  To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

R.C. 2929.12 in turn provides that a sentencing judge has discretion to determine the most effective means of complying with the purposes and principles of sentencing.  In exercising its discretion, the sentencing judge "shall consider" seriousness and recidivism factors pertinent to the ultimate achievement of the purposes of felony sentencing articulated in R.C. 2929.11(A).  R.C. 2929.12(A).  R.C. 2929.12(B) includes factors that suggest that the offense is more serious.  R.C. 2929.12(C) includes factors suggesting the offense is less serious.  The recidivism factors — factors indicating an offender is more or less likely to commit future crimes — are set forth in R.C. 2929.12(D) and (E).  Thus, in order to achieve the overriding purpose of felony sentencing expressed in R.C. 2929.11, the legislature has mandated that trial courts consider the express sentencing factors contained in R.C. 2929.12 in addition to "any other factors that are relevant to achieving those purposes and principles of sentencing."

{¶9}    Given the plain statutory language of R.C. 2929.11 and 2929.12, a sentencing judge must consider the principles and purposes of sentencing in imposing a sentence, even

---

[1] Although the core principles and purposes of sentencing expressed in R.C. 2929.11(A) were left unchanged, the legislature made one significant addition by  amending R.C. 2929.11(A) to mandate that courts refrain from rendering a sentence that imposes unnecessary burdens upon governmental resources.

though the judge is not required to make specific findings or state the reasoning for imposing a particular sentence. *State v. Jackson*, 9th Dist. Summit No. 26234, 2012-Ohio-3785, ¶ 25.

{¶10} Mr. Smith's stepson Mr. McNew spoke at the sentencing hearing. Mr. Smith's wife was in the process of divorcing Mr. Smith. Mr. McNew told the trial court that he believed Mr. Smith had come to the house to kill him and his mother, Mr. Smith's wife. He told the trial court that he believed the only reason he was present in court was because he had "fought for [his] life" and that he "believe[d] beyond a shadow of a doubt that [Mr. Smith] intended to kill [him] * * *." Mr. McNew also told the trial court that Mr. Smith "has always had anger and drinking problems[ and that] [h]e does not take responsibility for his actions[.]" He described previous occasions when Mr. Smith had had run-ins with the legal system. He told the trial court that Mr. Smith's spending a night in jail for hitting his wife had not changed Mr. Smith's behavior, and mentioned that Mr. Smith had driven his car while under the influence with his four grandchildren in the backseat. Mr. McNew told the trial court that he believed Mr. Smith to be a "con and manipulator * * *."

{¶11} Mr. McNew also described the incident at issue in the case, telling the trial court that Mr. Smith came to Mr. McNew's home looking for Mr. McNew's mother. Mr. Smith pointed a gun at Mr. McNew's chest and demanded to know where his mother was. Mr. McNew struggled with Mr. Smith for control of the gun, and Mr. Smith repeatedly yelled that he was going to kill Mr. McNew. Mr. McNew eventually got control of the gun but not before sustaining lacerations to his head and having his tooth broken. Mr. McNew also told the court that he suffered from post-traumatic stress disorder as a result of the attack.

{¶12} The presentence investigation report corroborates much of what Mr. McNew told the court. For example, the report shows that Mr. Smith was convicted of domestic violence in

1995.  It also shows that, in 2007, Mr. Smith was convicted of operating a vehicle while under the influence and that, on the same day, he was also convicted of four counts of child endangering.  Mr. Smith was also convicted of three additional OVIs dating back to 1984.

{¶13}  The presentence investigation report also contained a narrative of the police investigation into the incident.  The report indicated that, after the fight, Mr. Smith left Mr. McNew's house before the police arrived.  The police found a revolver at Mr. McNew's residence that had one spent casing and five unfired rounds.  When the police arrested Mr. Smith, they discovered a rifle in the back of his car.  Mr. Smith told the police, "'I'm under so much pressure, I just snapped.[] I didn't want to hurt anyone.  I'm so alone.  I just want to die.  I just wanted to scare my stepson.'"  He also told the police officers that he blamed Mr. McNew for his pending divorce.

{¶14}  The police also spoke with an acquaintance of Mr. Smith who told them that she had known Mr. Smith for about 40 years and had worked with him at Goodyear.  She told the police that Mr. Smith had called her the day of the incident to tell her that he "wanted to talk to her one last time.  He said he loved her and that he would miss her and that he was saying goodbye.  He said that he was going to Gleason Avenue to handle some business and that he was going to kill himself."

{¶15}  In the defendant's statement portion of the presentence investigation report, Mr. Smith wrote that he went to Mr. McNew's house to "'discuss the divorce his mother * * * was going thr[ough].'"  He claimed that Mr. McNew started the altercation when Mr. McNew saw that Mr. Smith had a gun.  He acknowledged that he should not have been at Mr. McNew's house, and wrote that he "'was severely depressed and not on [his] medication.  [His] drinking was also out of control.'"  Mr. Smith expressed remorse for what he did and the fear he caused

his family. He stated, "'I know I can never drink again or be around any fire[arms]. I realize I can[not] stop taking my medication!'"

{¶16} At the sentencing hearing, Mr. Smith again expressed remorse for his actions and reiterated that he realized he could never drink again. He apologized to his stepson and to his wife. The trial court stated that it had reviewed the presentence report, the statements of Mr. McNew, the letters it had received from other family members, and the statements of Mr. Smith. It then stated that, based on its review of the facts, it believed that what Mr. Smith had done was "to commit the worst form of felonious assault. The entry into a family member's home with a gun to solve your problems and then subsequently saying, 'I just snapped,' is not the way we do it. * * * That gives the Court every concern that if you were to be let out of prison at an early date, there is nothing to stop you from just snapping again, and drinking again, and causing these problems again." The trial court then sentenced him to the maximum term of eight years and to an additional three years for the firearm specification. Mr. Smith's counsel also acknowledged that the three-year firearm specification was required to run consecutively to the prison term for the felonious assault.

{¶17} As noted above, Mr. Smith entered a guilty plea to felonious assault, a second-degree felony. Pursuant to R.C. 2929.14(A)(2), the potential prison sentence for this offense was between two and eight years. Thus, the trial court sentenced Mr. Smith within the statutory range for a second-degree felony.

**R.C. 2929.11**

{¶18} Mr. Smith has argued that the trial court's sentence was contrary to law because it failed to consider certain provisions of R.C. 2929.11. As correctly noted by Mr. Smith, the trial court was charged with imposing a sentence that was "consistent with sentences imposed for

similar crimes committed by similar offenders." R.C. 2929.11(B). Mr. Smith argues that the trial court failed to issue a sentence that comported with this statutory requirement and such was contrary to law. In support, he points to *State v. Woolridge*, 9th Dist. Summit No. 26196, 2012-Ohio-3789, *State v. Gatt*, 9th Dist. Medina No. 10CA0108-M, 2011-Ohio-5221, *State v. Senz*, 9th Dist. Medina No. 10CA0042-M, 2011-Ohio-2604, and *State v. Richerson*, 9th Dist. Summit No. 25902, 2012-Ohio-457, as examples of similar defendants receiving lesser sentences for similar crimes. As an initial matter, however, it is important to note that Mr. Smith has not cited to a single case where a defendant used a firearm in committing the felonious assault, nor has he pointed to a case where the defendant attacked a family member while professing an intention to kill the victim. Furthermore, the defendants in *Woolridge*, *Gatt*, and *Richerson* did not challenge their sentences, and, therefore, the discussion in those cases about the defendants' records was limited, meaning that we are unable to truly review whether they were similar offenders to Mr. Smith. It is also important to note that the defendants in *Gatt* and *Woolridge* had both claimed to have acted in self-defense, a fact that the trial court could have considered as lessening the severity of their actions, and, while the defendant in *Senz* challenged his sentence on appeal, we cannot determine whether that defendant was a similar offender because the decision does not contain any information about the defendant's record. *See Gatt* at ¶ 6; *Woolridge* at ¶ 5; *Senz* at ¶ 8.

{¶19} Mr. Smith cites to three other cases in an attempt to demonstrate that the trial court failed to comply with R.C. 2929.11(B): *State v. Cronin*, 6th Dist. Sandusky No. S-09-032, 2010-Ohio-4717, *State v. Salemi*, 8th Dist. Cuyahoga No. 81091, 2002-Ohio-7064, and *State v. Dunn*, 3d Dist. Allen No. 1-02-98, 2003-Ohio-4353. As with the other cases, these cases are distinguishable. In *Dunn*, the defendant had recruited two men to assault the victim but did not

participate in the assault herself. *Dunn* at ¶ 2. By contrast, Mr. Smith personally assaulted the victim in this case. The defendant in *Cronin* saw the victim shove the defendant's mother, meaning that there was at least some provocation for the attack as opposed to Mr. Smith in this case attacking Mr. McNew without any indication of provocation. *Cronin* at ¶ 12-13. Finally, while the defendant in *Salemi* lay in wait for the victim outside of a party, there is no discussion in the case about the defendant's criminal history, which again would be necessary to determine whether the defendant in that case was a similar offender to Mr. Smith.

{¶20} In short, the cases cited by Mr. Smith are not indicative of similar defendants being sentenced for similar crimes. Mr. Smith's arguments focus solely on the harm suffered by the victim, suggesting that, because Mr. McNew's injuries were less severe than the victims in the other cases, he should have received the same sentence or a lesser sentence. However, R.C. 2929.11(B)'s directive is to impose a sentence that is "consistent with sentences imposed for similar crimes committed by similar offenders." Thus, while it is appropriate to examine the resulting harm to the victim, the trial court is required to examine the conduct of the offender, which would include the intention of the offender, the surrounding circumstances concerning the commission of the offense as well as the resulting harm. Although the cases Mr. Smith has relied upon provide examples of a lesser sentence where the resulting physical harm was more severe than the instant case, the trial court had to examine all of the circumstances concerning the commission of the offense. Moreover, Mr. Smith has not addressed the resulting mental harm to the victim that is present in this case but absent from the other cases.

{¶21} We recognize that it is possible to technically distinguish every case on its unique facts, and we do not imply that it impossible to rely on precedent when challenging a court's compliance with the consistency requirement of R.C. 2929.11. However, such precedent should

possess similarities regarding the surrounding circumstances concerning the commission of the offense as well as the resulting harm. In this case, Mr. Smith went, unprovoked, to Mr. McNew's house, and his statements to friends and family, as well as Mr. McNew's statement, all support the conclusion that Mr. Smith probably intended to kill Mr. McNew, Mr. Smith's wife, and himself. Had Mr. McNew not fought back, it is likely that Mr. McNew would have suffered injuries far more serious than the ones he did and possibly could even have been killed. By contrast, in most of the cases cited by Mr. Smith, the defendant suffered some form of provocation or claimed to be acting in self-defense. *See* R.C. 2929.12(C) (Factors that indicate the offender's conduct is less serious include that the victim induced or facilitated the offense, that the offender acted under strong provocation, that the offender did not expect to cause physical harm, and that there are substantial grounds to mitigate the conduct.). Under the circumstances of this case, we do not agree with Mr. Smith that the fact that these defendants received lesser sentences than Mr. Smith indicates that the trial court committed legal error by failing to properly consider R.C. 2929.11(B).

**Reliance upon former R.C. 2929.14(C)**

{¶22} Mr. Smith also argues that the trial court's sentence is contrary to law because the trial court misapplied the law as evidenced by its statement that Mr. Smith had committed "the worst form of felonious assault." He reasons that the trial court's statement "is plain error as it represents the court's reliance on [former] R.C. []2929.14(C) which was held unconstitutional by the [Ohio Supreme] Court in *Foster* and ultimately removed from the Ohio Revised Code by House Bill 86."

{¶23} Given the context of the trial court's statement, we do not agree that it evidences reliance upon the former statute. Former R.C. 2929.14(C) provided that

the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section *only* upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.

(Emphasis added.). As noted above, in achieving the purposes and principles of sentencing, the

trial court was required to consider the seriousness factors contained in R.C. 2929.12(B) and (C).

R.C. 2929.12(A). R.C. 2929.12(B) provides,

The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the

offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

The record reflects considerable evidence relevant to those factors. Conversely, the record reflects little evidence from which the court could discern that the offense was less serious than usual. R.C. 2929.12(C) (Factors that indicate the offender's conduct is less serious include that the victim induced or facilitated the offense, that the offender acted under strong provocation, that the offender did not expect to cause physical harm, and that there are substantial grounds to mitigate the conduct.). Given the fact that the trial court was charged with considering the seriousness factors, and given its statement that it had reviewed the presentence report, the statements of Mr. McNew, the letters it had received from other family members, the arguments of counsel, and Mr. Smith's statement, we view the trial court's statement as expressing its view that, under the circumstances, the felonious assault committed by Mr. Smith was particularly serious. Thus, we do not find Mr. Smith's argument that the court erroneously applied the law well taken.

**R.C. 2929.12**

{¶24} In his second assignment of error, Mr. Smith also more broadly argues that the trial court focused solely on the seriousness of the offense and did not properly weigh the R.C. 2929.12 factors, instead placing almost exclusive reliance upon its view that this was the most serious form of the offense to the exclusion of weighing the rest of the factors. In particular, he argues that the trial court failed to consider the factors in R.C. 2929.12(E) that would indicate he was less likely to commit future crimes. Those factors include (1) the offender had not been adjudicated a delinquent child, (2) the offender had not previously been convicted of or pleaded guilty to an offense, (3) the offender had lived a law-abiding life for a significant number of years, (4) the circumstances were not likely to reoccur, and (5) the offender shows genuine

remorse for the crime. R.C. 2929.12(E). The record reflects that the trial court had evidence before it relevant to all of these factors.

{¶25} Mr. Smith specifically argues that the two pertinent factors that the trial court failed to consider in his case are that he lived a law-abiding life and that he expressed remorse for the crime.[2] Regarding Mr. Smith's law-abiding life, it appears that Mr. Smith's argument is premised upon the prosecutor's statement at the sentencing hearing that Mr. Smith did not have much of a record. However, Mr. Smith's presentence investigation report clearly indicates that he has four convictions related to driving a vehicle while intoxicated dating back to 1984. In 2007, he was also convicted of four counts of endangering children for having his grandchildren in the car while he was driving under the influence.[3] Additionally, in 1995, he was convicted of domestic violence. While this is certainly far from the worst record, hence the prosecutor's statement, the court was not confronted with an individual who had no criminal record or only the most minor of offenses. Furthermore, Mr. Smith's most recent convictions were in 2007, only a few years before his actions at issue in this case. *See* R.C. 2929.12(E)(3) ("Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.").

{¶26} Mr. Smith also argues that the trial court failed to account for the fact that he expressed remorse for his crime. However, it is important to note that R.C. 2929.12(E)(5) requires an offender express "*genuine* remorse[.]" (Emphasis added.). The record reflects that

---

[2] Mr. Smith mentions in passing that the trial court failed to consider "the circumstances under which the crime occurred." However, he develops no argument on this point. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998). Regardless, the trial court clearly considered the circumstances of the crime.

[3] We note that the offense at issue in this case occurred while Mr. Smith abused alcohol. The record reflects the trial court's concern that, if Mr. Smith were not incarcerated, the circumstances could likely occur again. R.C. 2929.12(E)(4).

the trial court considered whether Mr. Smith expressed genuine remorse. We note that, while Mr. Smith expressed remorse at the hearing and in the presentence investigation report, it does not appear that the trial court actually believed that Mr. Smith's remorse was genuine. *See id.* Given our review of the record, we cannot say that the trial court failed to properly consider R.C. 2929.12(E)(5).

**{¶27}** Accordingly, we overrule Mr. Smith's first and second assignments of error.

III.

**{¶28}** In light of the foregoing, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                     _____

                                     EVE V. BELFANCE
                                     FOR THE COURT

HENSAL, J.
CONCURS.

WHITMORE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

DONALD J. MALARCIK, Attorney at Law, for Appellant.

FRANK A. BARTELA, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.